**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| **TAVON MORGAN,** <br> 3406 EDGEWOOD RD. <br> BALTIMORE, MD 21215 <br><br> Plaintiff, <br><br> -v- <br><br> **SOUTHWEST AIRLINES CO.,** <br> 2702 LOVE FIELD DR. # DR6TX <br> DALLAS, TX 75235 <br> **SERVE:** Prentice-Hall Corporation System, MA <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202 <br><br> Defendant. | * <br> * <br> * <br> * <br> *   Civil No. _____ <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

Plaintiff Tavon Morgan through undersigned counsel files this Complaint against Southwest Airlines Co. ("Southwest") for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981. Southwest Airlines falsely accused Mr. Morgan of selling guest passes to drug traffickers in March 2018. Southwest suspended Mr. Morgan for approximately 10 days, conducted an investigation, and concluded there had been no violation of company policy. Accordingly, Southwest returned Mr. Morgan to work. For the next five months, Mr. Morgan worked without incident and Southwest made no further comments about the false allegations. Indeed, Southwest even promoted Mr. Morgan in May 2018.

Then, in June 2018, Mr. Morgan made a complaint of race discrimination because black employees were being arbitrarily denied supervisor positions. On August 9, 2018, Southwest fired Mr. Morgan claiming he admitted to selling guest passes during the investigation that had

concluded almost five months prior. This was simply false. The real reason Southwest terminated Mr. Morgan was because of his race and in retaliation for making complaints of race discrimination.

## I.
## PARTIES

1. Tavon Morgan is an individual who resides in Baltimore, Maryland.

2. Defendant Southwest Airlines Co. is a Texas corporation headquartered in Dallas County, Texas. Defendant may be served with process by serving it registered agent, The Prentice-Hall Corporation System, MA, at 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202.

## II.
## JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear the merits of Plaintiff's Section 1981 claims under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has original jurisdiction to hear the merits of Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f)(3).

4. Venue is appropriate in the District of Maryland Northern Division because the acts giving rise to this suit occurred in Anne Arundel County, Maryland.

## III.
## FACTS

5. Southwest Airlines first hired Mr. Morgan to work as a ramp agent at BWI in April 2014.

6. Southwest promoted Mr. Morgan to ramp supervisor and then again to training supervisor over the course of his career.

7. For the duration of his employment, Mr. Morgan always gave his best efforts to Southwest.

8. Unfortunately, Southwest does not treat its black employees the same as its white employees.

**Southwest falsely accuses Mr. Morgan of selling guest passes to drug traffickers.**

9. In March 2018, Southwest falsely accused Mr. Morgan of being involved in drug activity.

10. Ann Marie Donalson from corporate security interrogated Mr. Morgan for approximately three hours.

11. Specifically, Southwest accused Mr. Morgan of selling or giving guest passes to people trafficking drugs.

12. Mr. Morgan vehemently denied ever providing guest passes to drug traffickers or ever violating any Southwest policy by selling guest passes for cash or cash equivalents.

13. At the end of the interrogation, Southwest placed Mr. Morgan on a one-week suspension pending an investigation.

**Southwest completes its investigation, clears Mr. Morgan of any wrongdoing, and returns him to work.**

14. At the end of the one-week suspension, Mr. Morgan contacted Southwest to find out when he could return to work.

15. Southwest told Mr. Morgan the investigation would take another week.

16. Finally, after about 10 days total, Southwest, through Mr. Morgan's manager Jason Hanley, told Mr. Morgan the investigation had not revealed any violation of company policy and cleared Mr. Morgan to return to work.

17. Assistant Station Manager Mark Hughes also told Mr. Morgan that the investigation was over and everyone needed to move forward.

18. On or about April 2, 2018, after Mr. Morgan had returned to work, SSO TJ Cameron told Mr. Morgan that Southwest had wanted to fire him as a result of the March meeting but did not have any basis to do so.

19. Mr. Morgan returned to work at Southwest without issue for approximately five months.

20. During that time, Southwest made no further comments about the false allegations or alleged investigation.

21. Indeed, Southwest even promoted Mr. Morgan from ramp supervisor to training supervisor on or about May 21, 2018.

**Mr. Morgan makes a complaint of race discrimination.**

22. In June 2018, Melvin Lucas was being considered for a training supervisor position.

23. Southwest, through Mr. Hughes, originally denied Mr. Lucas the position because he had too many occurrences (i.e. absences/tardies) on his record.

24. Mr. Hughes also had not wanted Mr. Morgan to receive a promotion to training supervisor.

25. When Mr. Morgan found out the reason Mr. Hughes had denied Mr. Lucas the position, Mr. Morgan complained to his direct supervisor, Bianca Bennett, about the discriminatory treatment.

26. Specifically, Mr. Morgan asked why Southwest denies black employees, like Mr. Lucas, supervisor positions based on the number of occurrences they have on their record but routinely promotes white employees, like James McGill, Frank Barna, and Brandon Barna, regardless of how many occurrences they have.

27. Ms. Bennett replied that Mr. Morgan made a good point and she would talk to Mr. Hughes about it.

28. After Mr. Morgan complained, Southwest moved forward with Mr. Lucas's promotion.

**Southwest Airlines suddenly terminates Mr. Morgan alleging he admitted to buying and selling guest passes during the course of the investigation that had concluded several months prior.**

29. On August 9, 2018, Southwest, through Mr. Hughes, summarily terminated Mr. Morgan for the stated reason of admitting to exchanging guest passes for cash or cash equivalents during the investigation that had concluded months prior.

30. Southwest's stated reason for termination was simply false.

31. The only thing Mr. Morgan admitted during the interrogation was that he accepted eGuest Passes that were transferred to him by other Employees and gifted eGuest Passes to individuals in exchange for services or products.

32. This practice is fully permitted by Southwest as Southwest's Employee Travel Privileges Policies specifically states:

> "eGuest Passes or eGuest Pass listings may not be sold or exchanged for cash or cash equivalents; however, eGuest Passes may be transferred to other Employees or gifted to an individual in exchange for services or products."

33. Moreover, Southwest claims it relied on information from the interrogation of Mr. Morgan on March 19, 2018, when it decided to terminate Mr. Morgan on August 9, 2018, almost five months after the fact.

**Southwest terminated Mr. Morgan because of his race and in retaliation for making complaints of race discrimination.**

34. The real reason Southwest terminated Mr. Morgan was because of his race and in retaliation for making complaints of race discrimination.

35. This is further evidenced by the fact that a similarly-situated white employee, Frank Barna, who actually did admit to selling passes prior to the time Mr. Morgan was accused of it, was not terminated.

36. Southwest Airlines' actions violate Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

37. Plaintiff timely filed a charge of discrimination against defendant with the Equal Opportunity Commission (EEOC).

38. Plaintiff files this complaint within 90 days after receiving a notice of right to sue from the EEOC. A copy of the Notice of Right to Sue is attached as **Exhibit A**.

39. All conditions precedent to the bringing of this suit have been satisfied or fulfilled.

## V.
## RACE DISCRIMINATION UNDER TITLE VII

40. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

41. Defendant terminated Mr. Morgan because of his race.

42. Defendant's actions constitute violations of Title VII of the Civil Rights Act of 1964.

43. Due to Defendant's actions, Mr. Morgan has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

44. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Morgan's federally protected rights.

## VI.
## RETALIATION UNDER TITLE VII

45. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

46. Defendant terminated Mr. Morgan in retaliation for making complaints of race discrimination.

47. Defendant's actions constitute violations of Title VII of the Civil Rights Act of 1964.

48. Due to Defendant's actions, Mr. Morgan has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

49. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Morgan's federally protected rights.

## VII.
## RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

50. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

51. Defendant terminated Mr. Morgan because of his race.

52. Defendant's actions constitute a violation of 42 U.S.C. § 1981.

53. Due to Defendant's actions, Mr. Morgan has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

54. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Morgan's federally protected rights.

55. Defendant's acted with malice or reckless indifference to the rights of Mr. Morgan, thereby entitling him to an award of punitive damages.

## VIII.
## RETALIATION UNDER 42 U.S.C. § 1981

56. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

57. Defendant terminated Mr. Morgan in retaliation for making complaints of race discrimination.

58. Defendant's actions constitute a violation of 42 U.S.C. § 1981.

59. Due to Defendant's actions, Mr. Morgan has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

60. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Morgan's federally protected rights.

61. Defendant's acted with malice or reckless indifference to the rights of Mr. Morgan, thereby entitling him to an award of punitive damages.

## IX.
## JURY DEMAND

62. Plaintiff hereby makes a demand for a trial by jury on all issues, claims, and defenses in this action.

# X.
# DAMAGES

63. WHEREFORE, Plaintiff Tavon Morgan respectfully requests that the above-named Defendant, be cited to appear in this matter and that he be awarded:

  i. Back pay, including but not limited to, lost wages, and other employment benefits;
  ii. Front pay, including but not limited to wages, and other employment benefits;
  iii. Judgment against Defendants for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;
  iv. Actual damages;
  v. Punitive damages;
  vi. Injunctive relief;
  vii. Judgment against Defendants for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit;
  viii. Prejudgment and post-judgment interest as allowed by law; and
  ix. Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

Respectfully submitted,

/s/
Robin R. Cockey *(Local Counsel)*
Federal Bar No.02657
Ashley A. Bosché
Federal Bar No. 28800

Cockey Brennan & Maloney, P.C.
313 Lemmon Hill Ln.
Salisbury, Maryland 21801
Telephone: (410) 546-1750
Facsimile:  (410) 546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com

        Julie L. St. John *(Pending Admission Pro Hac Vice)*
        Texas Bar No. 24106460

        WILEY WHEELER, P.C.
        1651 Richmond Ave.
        Houston, Texas 77006
        Telephone: (713) 337-1333
        Facsimile:  (713) 337-1334
        jstjohn@wiley-wheeler.com

        ATTORNEYS FOR PLAINTIFF